# Wythebille

LENA H. ARNOLD, ADMINISTRATRIX OF THE ESTATE OF
JOSEPH D. ARNOLD, DECEASED, V. DANIEL C. WOOD,
ET AL.

June 12, 1939.

Record No. 2073.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*Hoge & Austin* and *W. Courtney King,* for the plaintiff in error.

*B. E. Estes* and *Harvey B. Apperson,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

On September 13, 1937, at 1:30 o'clock in the afternoon, Joseph D. Arnold, while walking southwardly along the State highway between Eagle Rock and Clifton Forge, in Botetourt county, was struck and killed by a truck owned by Daniel C. Wood and others, partners trading as Wood

Lumber & Supply Company, and driven northwardly by Mills, one of its employees.

Arnold's administratrix brought suit against the owners and the operator of the truck, alleging that his death was proximately due to the negligence of the driver. After the plaintiff had put on her evidence in chief and rested, the defendants filed a demurrer to the evidence, which was sustained by the trial court. This writ has been granted to review the action of the trial court in sustaining the demurrer and in entering a final judgment for the defendants below. The parties will be referred to as they appeared in the court below.

At the place where the accident occurred the highway is straight and runs approximately north and south through a rolling country. The paved portion of the road is about twenty-three feet wide.

The only eye-witness to the accident was the driver of the truck, who was not called to testify. The plaintiff introduced three persons to whom the driver had given statements as to how the accident occurred. These were Trolan, a State highway officer, Mrs. Lena H. Arnold, the mother of the deceased, and Miss Esther Arnold, the sister of the deceased.,

Trolan came upon the scene shortly after the accident. He found the body of the deceased lying across the eastern half of the paved portion of the road, with the head to the west and the feet to the east. The truck was parked one hundred and thirty-seven paces north of the body, on the east side of the highway, with both right wheels entirely off of the paved portion of the road. Apparently the left wheels of the truck had run over the chest of the deceased.

Mills told the officer that as he was proceeding northwardly he saw Arnold walking in the opposite direction on the *west* side of the highway, and that as the truck drew abreast of Arnold the latter "made a run and lunged beneath the wheels of the truck." Mills said that he was quite unnerved by the realization that his vehicle had struck a person, and consequently he did not stop the truck

immediately but allowed it to proceed some distance beyond the point of collision before bringing it to a gradual stop.

Except in one particular the driver made the same statement to both Mrs. Arnold and Miss Arnold. He told them that Arnold was walking on the *east* side of the highway and that when the truck reached him he "took three running steps" and threw himself under the wheels of the truck.

The truck driver is blind in the right eye. His vision in the left eye is somewhat impaired but this had been corrected by glasses. Consequently after having been tested by an examiner of the Motor Vehicle Department, in 1936, he had been granted a driver's permit which was in force at the time of the accident.

At the time of his death Arnold was thirty-eight and one-half years old. He had been committed to the Western State Hospital at Staunton on October 2, 1935, as a victim of manic depressive insanity. His condition had very much improved by December 12th of that year, when he was paroled. On June 22, 1937, less than three months before the accident, his illness returned and he again went to the hospital. By September 11th his condition had so much improved that the superintendent thought he might be paroled again. However, on September 12th, the day preceding the accident, he quit the hospital without leave.

The superintendent of the hospital testified that one subject to the type of insanity from which the deceased suffered passed through definite and successive cycles of depression, excitement, normality, and depression; and that having once developed this type of insanity a recurrence of the trouble was probable even after the return of normality. He also testified that those suffering from this trouble, when on the border line between depression and normality, frequently had suicidal tendencies, but that Arnold had showed no such tendency, although he had had ample opportunity for self-destruction throughout his stay at the hospital.

The administratrix insists that the facts and circumstances related were sufficient to go to the jury on the question as to whether the driver of the truck was guilty of negligence which proximately caused Arnold's death. She points out that according to the statement of the driver to the mother and sister of the deceased, the latter was walking on the proper side of the road; that the road was straight and the driver's view ahead was unobstructed; that the accident happened during daylight; that the fact that the truck stopped one hundred and thirty-seven paces beyond the body of the deceased showed that it was being driven at an excessive rate of speed; and that the driver's statement to the police officer that the deceased was walking on the *west* side of the road, and his contrary statement made to the relatives of the deceased that he was walking on the *east* side, proved that the driver was not keeping a proper lookout for and did not see the deceased in time to avoid the collision, or, by reason of impaired vision, was unable to see him.

The weakness of this argument is that it is based on presumptions which are directly contrary to the known facts. According to the evidence before us, despite the driver's impaired vision, he saw the deceased in ample time to avoid the accident, and there would have been no collision if the deceased had not run or thrown himself in front of the truck. There is no evidence, then, that the driver was not keeping a proper lookout, or that he failed to see the deceased.

Nor is there any evidence that the driver was proceeding at a reckless or unlawful rate of speed, or that he did not have his truck under proper control. He gives a very plausible reason for not stopping immediately after the collision,—that he was frightened by the sudden realization that his vehicle had struck a human being and made no effort to bring it to a stop until it had proceeded some distance beyond the point of collision.

If the accident happened in the manner in which the driver stated, clearly he was not at fault. It was a plain case of suicide.

If, on the other hand, we discard the driver's statements as being improbable and incredible, then we have no evidence as to why or how the accident happened.

This court said in *Chesapeake & Ohio Ry. Co.* v. *Heath,* 103 Va. 64, 66, 48 S. E. 508: "The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred —some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment, upon mere supposition, without a single known fact."

See also, *Virginian Ry. Co.* v. *Underwood,* 152 Va. 264, 275, 146 S. E. 277; *Southern Ry. Co.* v. *Hall's Adm'r,* 102 Va. 135, 45 S. E. 867.

It is argued on behalf of the administratrix that since the defendants failed to call the truck driver as a witness, there is a presumption that the latter was guilty of negligence. The answer is that until the plaintiff made out a *prima facie* case there was no duty on the defendants to bring forward any evidence or to call any witnesses on their behalf.

In *Hendricks* v. *Virginia Electric & Power Co.,* 161 Va. 793, 799, 172 S. E. 160, 162, we said:

"It is contended that presumptions unfavorable to the defendant exist because the motorman was not called as a witness. This rule does not apply where the plaintiff, bear-

ing the burden of proof, which the law places upon him, has made out no case at all.

■ " 'There is no presumption against a defendant for failure to call witnesses when the plaintiff carrying the burden of proof has not made a *prima facie* case, and such presumption cannot be used to relieve the plaintiff from the burden of proving his case. *Cooper* v. *Upton*, 60 W. Va. 648, 64 S. E. 523.' *Hutcheson* v. *Savings Bank*, 129 Va. 281, 105 S. E. 677, 680."

■ Neither is there any merit in the contention of the administratrix that the doctrine of *res ipsa loquitur* applies.

■ In the first place, it is well settled in this State that this doctrine applies only in the absence of evidence and when the cause of the accident is not explained. It does not apply where, as in the instant case, there is evidence explaining the cause of the accident. *Richmond* v. *Hood Rubber Products Co.*, 168 Va. 11, 16, 17, 190 S. E. 95; *Norfolk Coca-Cola Bottling Works, Inc.* v. *Krausse*, 162 Va. 107, 115, 173 S. E. 497; *Riggsby* v. *Tritton*, 143 Va. 903, 912, 129 S. E. 493, 45 A. L. R. 280.

■ In the second place, even if we reject the truck driver's version of the accident, still the doctrine does not apply. The doctrine rests upon the assumption that the thing which causes the injury is under the exclusive management and control of the defendant, and that the accident is such as in the ordinary course of events does not happen without fault on the part of the defendant. *Duke* v. *Luck*, 150 Va. 406, 412, 143 S. E. 692. But the doctrine does not apply in the case of an unexplained accident which may have been attributable to one of several causes, for some of which the defendant is not responsible. *Peters* v. *Lynchburg Light & Traction Co.*, 108 Va. 333, 337, 61 S. E. 745, 22 L. R. A. (N. S.) 1188; *Riggsby* v. *Tritton, supra* (143 Va. 903, at pages 914, 915, 129 S. E. 493, 45 A. L. R. 280).

■ Now, it is a matter of common knowledge that collisions between motor vehicles and pedestrians frequently occur on the highways without fault on the part of the drivers of the vehicles and due to causes entirely beyond

their control, such as the negligence of pedestrians themselves.

So, in the instant case if we assume that the statements of the truck driver are untrue, we have an unexplained accident of the type which we know from common experience frequently happens by reason of causes entirely beyond the control of the operator of the vehicle and without any negligence on his part. Clearly, the doctrine of *res ipsa loquitur* has no application in such a case.

We are of opinion that the trial court was right in sustaining the demurrer to the evidence, and accordingly the judgment is

*Affirmed.*