**TASKA v. WOLFE.**

**No. 6682.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 9, 1953.

Decided Dec. 21, 1953.

Preston P. Taylor, Norfolk, Va., for appellant and cross-appellee.

George E. Allen, Richmond, Va. (Charles E. Maurice and Allen, Allen, Allen & Allen, Richmond, Va., on the brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Eastern District of Virginia which upheld a verdict of $47,500 against Charles M. Taska for damages sustained in a collision between Taska's automobile and Thomas Kenneth Wolfe, who was on horseback at the time. Taska's motions for directed verdicts and his motion to set aside the verdict were denied and he has appealed to us.

Two primary questions are presented for our decision: (1) Was there sufficient evidence to take to the jury the question of whether Taska was guilty of any primary negligence which proximately contributed to the accident; and (2) Was Wolfe guilty of contributory negligence as a matter of law.

A subsidiary question was raised on cross appeal as to the propriety of sending back the jury for a specific division of damages between the amount allowed for personal injuries to Wolfe and the amount allowed for the value of the horse which died as a result of the accident. We find it unnecessary to decide this question, however, as we believe the lower court erred in deciding both the principal questions listed above in favor of Wolfe. Since the judgment of the lower court must, accordingly, be overruled, no question of the propriety of allowing a division of damages can be involved.

This accident occurred at approximately 1:30 P.M. on June 24, 1951, on United States Highway No. 1, which runs approximately North and South between Petersburg, Virginia, and Richmond, Virginia. The road is a four lane, hard surfaced highway, is straight

and level for three city blocks or more both North and South of the scene of the accident, and is usually heavily traveled.

Wolfe testified that while riding his horse, he was proceeding along the dirt shoulder of the Western side of the highway until he came upon the place at which he decided to cross the highway. Taska's car was proceeding North. There are intersecting roads 100 feet to the North and some 300 feet to the South, yet Wolfe elected to cross from a private lane or private premises. Before attempting his crossing, Wolfe looked both to his right and to his left and saw no traffic coming from either direction. Upon reaching the center of the highway, he again looked to his right and saw Taska's car about 300 feet away. Taska's car was approaching "pretty fast." There was still no other traffic in sight. Wolfe nevertheless attempted to complete his crossing of the highway with his horse at a walk, and he did not again look in the direction of the approaching car nor did he see the car again until he was struck. Wolfe also testified that he, at all times, had his horse under perfect control and could have stopped him practically in his tracks at any time during the crossing. He could just as easily have increased the speed of his horse which would have prevented any collision.

Taska testified that he first saw Wolfe when they were still about 200 yards apart; that, at the time, he was driving about 35 or 40 miles an hour and the speed limit was 50; that, immediately upon seeing Wolfe, he took his foot off the accelerator and began to decelerate his speed, believing that the horse, at its then walking gait, would clear the road before he, Taska, reached the point of crossing. Taska further testified that when he reached a point about 40 or 50 feet from the horse, and at a time when the horse was partly or wholly off the hard surface of the Eastern side of the road, the horse started prancing or rearing up, whereupon Taska applied his brakes and veered his car to his left, and, as he came abreast of the horse, the horse came down on top of the hood of Taska's car. Taska's car left skid marks for 25 to 30 feet, at the end of which it came to a complete stop. There were no actual eye witnesses to the accident other than Taska and Wolfe.

The evidence in this case is uniquely free from dispute; only the question of the rearing up of the horse is contested by the parties. Under this evidence, then, we do not believe that Wolfe has proved any primary negligence of Taska. We think, further, that Wolfe was guilty of contributory negligence as a matter of law.

Wolfe has, in effect, proved very little in his favor beyond the bare fact that there was an accident. There is no evidence that Taska was exceeding the speed limit or that he was not keeping a proper lookout.

█ In Virginia, it cannot be presumed from the mere proof of the happening of an accident, such as the one here, that the negligence of the defendant was the proximate cause thereof. Guthrie v. Carter, 190 Va. 354, 57 S.E. 2d 45; Richter v. Seawell, 183 Va. 379, 32 S.E.2d 62; Arnold v. Wood, 173 Va. 18, 3 S.E.2d 374. Opposed to this, Wolfe contends that either excessive speed or improper lookout on the part of Taska may be inferred from the circumstances of the accident, relying upon Yellow Cab Co. v. Gulley, 169 Va. 611, 194 S.E. 683; Penoso v. D. Pender Grocery Co., 177 Va. 245, 13 S.E.2d 310; Yellow Cab Corp. v. Henderson, 178 Va. 207, 16 S. E.2d 389; and Temple v. Ellington, 177 Va. 134, 12 S.E.2d 826.

Not one of these cases, however, presents a situation where a presumption of liability is inferred from the mere happening of the accident. In the Gulley case, the negligence of the defendant cab driver was admitted and the contributory negligence of plaintiff in proceeding into the face of a pre-observed, patent and imminent peril was inferred, as a matter of law, from her testimony—a holding which would seem to

mitigate against Wolfe in the instant case. Similarly, in the Penoso case, the plaintiff was found contributorily negligent, as a matter of law, for imprudently crossing an intersection in the face of nearby, oncoming traffic. And in the Henderson and Ellington cases, there was more than ample independent evidence to sustain the jury's finding of negligence.

In deciding the question of contributory negligence under a motion for a directed verdict or a motion to set aside the verdict, we are obliged to consider the evidence in the light most favorable to the plaintiff, Wolfe. Under the most lenient interpretation, however, we are unable to see how Wolfe was free from fault. He was crossing the highway at other than an intersection, when an intersection was close at hand; he knew the highway to be a heavily traveled, interstate, arterial route; he saw the car approaching from 300 feet, traveling "pretty fast;" with his horse under perfect control and no other traffic in sight, he could have stopped, turned back or continued across at a trot. Yet, without again looking towards his only possible avenue of harm, he continued his horse's walk across the highway— the only alternative action which could lead him to disaster. Taska's car was in his right-hand lane, where he had the right to be. Wolfe should have ascertained, before leaving his position of safety at the center of the highway, that he could complete his crossing without peril, and this he clearly failed to do.

Upon these admitted facts we can only conclude, as a matter of law, that Wolfe was guilty of contributory negligence. See, Meade v. Saunders, 151 Va. 636, 144 S.E. 711; Frazier v. Stout, 165 Va. 68, 181 S.E. 377; Yellow Cab Co. v. Gulley, supra; Penoso v. D. Pender Grocery Co., supra.

On the basis of the admitted evidence in this case and under the authorities cited, we do not believe that Wolfe has, as a matter of law, made out a prima facie case of negligence on the part of Taska. The lower court, therefore, erred in not granting either appellant's motions for a directed verdict or his motion to set aside the verdict.

The judgment of the lower court must, accordingly, be reversed and the case is remanded to the District Court with instructions to enter judgment in favor of the defendant, Taska.

Reversed.